**Doris CRAWFORD, Plaintiff–Appellee,**

v.

**FIRST COLONY LIFE INSURANCE COMPANY, Defendant–Appellant.**

**No. 08–0189–cv.**

United States Court of Appeals, Second Circuit.

Feb. 17, 2009.

Charles K. Norris, Chinigo Leone & Maruzo, Norwich, CT, for Plaintiff–Appellee.

Steven M. Richard (Kevin M. Fitzgerald, on the brief), Nixon Peabody LLP, Providence, RI, for Defendant–Appellant.

PRESENT: JOSÉ A. CABRANES, RICHARD C. WESLEY, Circuit Judges, and EDWARD R. KORMAN, District Judge.*

## SUMMARY ORDER

Defendant–Appellant First Colony Life Insurance Company ("defendant" or "First Colony") appeals an December 28, 2007, 2007 WL 4800719, judgment of the District Court, entered in favor of Plaintiff–Appellee Doris Crawford ("plaintiff" or "Crawford"), and denying what the Court construed to be defendant's motion for reconsideration of the District Court's November 26, 2007, 2007 WL 4225799, Ruling, which denied defendant's motion for summary judgment on plaintiff's breach of contract claim. We assume the parties' familiarity with the underlying factual and procedural history of the case, though we revisit key portions of that history here.

## BACKGROUND

The factual history of this case is undisputed. On July 8, 2004, plaintiff's son, James S. LePage, Sr., filled out an application for a term life insurance policy in the amount of $250,000 from First Colony. On the same date, LePage executed a Temporary Insurance Application and Agreement ("TIAA"), also with First Colony, for which he paid $469.99. The single-page TIAA set forth the terms of his life insurance coverage that would apply between the date the TIAA was executed and the date he received his life insurance policy. The TIAA stated at the outset: "Subject to the terms of the policy applied for and this TIAA, the Insurer agrees to pay the Limited Amount to the beneficiaries listed in the Application–Part I upon receipt of due proof that the Proposed Insured died while temporary insurance was in effect." J.A. at 26. The TIAA went on to stipulate that "[t]he Insurer's liability will be limited to a return of the Amount Remitted if . . . the Proposed Insured dies by suicide." *Id.* Finally, the document stated that "[u]pon policy delivery, the policy will replace this TIAA and coverage will continue under the policy without interruption." *Id.*

On September 1, 2004, First Colony issued a twenty-year term life insurance policy to LePage in the amount of $250,000. Both First Colony and LePage had agreed to backdate the policy, such that the official "Policy Date" was April 28, 2004, which was noted on the policy's front page,

---

* The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

and within the policy's Schedule. In the General Provisions section of the policy, First Colony described the purpose of the Policy Date:

Policy anniversaries, policy years, policy months, and Premium Due Dates are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter. A policy anniversary occurs at the beginning of each policy year after the first policy year.

The first policy month begins on the Policy Date. Subsequent policy months begin on the same day of the month as the Policy Date.

*Id.* at 30.

Directly below the listing of the Policy Date on the policy's cover page and Schedule, First Colony separately listed the "Date of Issue" as "SEPTEMBER 1, 2004." *Id.* at 29, 32. Although its purpose was not noted in the General Provisions section, two provisions of the policy specifically made reference to the Date of Issue. Of relevance to this case, the policy contained a section entitled "Suicide," which stated that "[i]f the Insured, while sane or insane, dies by suicide within two years after the Date of Issue shown in the Schedule, the death proceeds under this Policy will be an amount equal to the premiums paid less the loan balance as the date of his death." *Id.* at 36. As noted above, if one then refers to the policy's schedule, the Date of Issue is listed as September 1, 2004.

LePage received and signed a copy of the policy on September 23, 2004. It appears that he consistently paid his monthly premiums until his death by suicide on May 28, 2006. Plaintiff, LePage's sole beneficiary under the policy, submitted to First Colony a claim for death proceeds under the policy in June 2006. First Colony determined that LePage had died by suicide within two years of the Date of Issue, and issued a check to plaintiff on October 4, 2006 in the amount of $4,182.89, which equaled the total of the monthly premiums paid by LePage and the interest from the date of his death.

On December 27, 2006, plaintiff brought an action for breach of contract in Connecticut Superior Court, seeking the full proceeds of the life insurance policy—$250,000. The Complaint stated that the life insurance policy became effective on April 28, 2004 (the "Policy Date"), and because LePage's death occurred over two years from that date, plaintiff was entitled to receive the full proceeds of the policy. In January 2007, First Colony removed the case to the United States District Court for the District of Connecticut, pursuant to 28 U.S.C. §§ 1441 and 1446, on the basis of diversity of citizenship; plaintiff is a resident of Connecticut, and First Colony's state of incorporation and principal place of business is Virginia.

On July 24, 2007, First Colony moved for summary judgment. In a November 26, 2007 Ruling, the District Court denied First Colony's motion, and further ordered the company to show, by December 10, 2007, "why this Ruling should not result in Judgment for the Plaintiff." J.A. at 65. The District Court reasoned that because the TIAA used the phrase "subject to the terms of the policy applied for," it had incorporated the terms of the policy into the TIAA. *Id.* at 63. Accordingly, "the insurance company surely intended to bind the insured by the provisions of the Policy, including the Suicide clause, during the period that the TIAA was in effect." *Id.* at 63–64. The District Court concluded that by "incorporating the terms of the Policy into the TIAA, and then arguing that those same terms [specifically the suicide clause] were not in effect prior to the Issue Date, First Colony's interpretation

of the policy creates an ambiguity as to when the parties intended the Suicide clause to be effective," and that, on the basis of Connecticut contract law, "the court must resolve that ambiguity in favor of the insured." *Id.* at 64. Pursuant to the District Court's order, First Colony submitted a Show Cause Memorandum. The District Court construed the memorandum as a Motion for Reconsideration of its earlier Ruling, denying defendant's motion for summary judgment, and then determined that defendant had failed to show cause why judgment for plaintiff should not enter. *Id.* at 66–67. Accordingly, the District Court entered judgment for plaintiff. Defendant filed a timely notice of appeal.

Before this Court defendant argues that the life insurance policy created no ambiguity with respect to the suicide clause inasmuch as "[t]he clause states plainly that its two-year period runs from the 'Date of Issue shown in the Schedule,' which is September 1, 2004." Appellant's Br. at 12. In response, plaintiff argues that the policy did create an ambiguity, though for reasons other than those stated by the District Court. Instead, plaintiff argues that a layperson would not know the meaning of the term "Date of Issue," and that the policy created an ambiguity by not specifically defining the term's meaning. Appellee's Br. at 10–11. In the face of this asserted ambiguity, plaintiff argues that the policy should be construed in her favor.

## ANALYSIS

We review *de novo* an order granting summary judgment. *See, e.g., Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003). Summary judgment is appropriate only if "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The parties do not dispute that Connecticut law governs our interpretation of the policy in this diversity action. With respect to policy interpretation, the Supreme Court of Connecticut in *Connecticut Insurance Guaranty Association v. Fontaine,* 278 Conn. 779, 900 A.2d 18 (2006) stated:

> We begin by setting forth the well settled standard of review for interpreting insurance contracts. Construction of a contract of insurance presents a question of law for the court which this court reviews *de novo.* It is the function of the court to construe the provisions of the contract of insurance. The interpretation of an insurance policy involves a determination of the intent of the parties as expressed by the language of the policy[,] including what coverage the insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy. A contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived *from the four corners of the policy giving the words of the policy their natural and ordinary meaning and construing any ambiguity in the terms in favor of the insured.* Moreover, although the legal definition of the disputed claim is relevant in determining whether that claim is covered under the policy language at issue, that *policy language remains the touchstone of our inquiry.*

*Id.* at 784–85, 900 A.2d 18 (emphasis added; internal citation, alterations, and quotation marks omitted).

Looking to the policy, the suicide clause clearly states that "[i]f the Insured, while sane or insane, dies by suicide within two years after the Date of Issue shown in the Schedule, the death proceeds under this Policy will be an amount equal to the premiums paid less the loan balance as of

the date of death." J.A. at 36. Again, as noted above, the Schedule clearly states that the Date of Issue is September 1, 2004. We find nothing ambiguous about this "policy language." *Connecticut Insurance Guaranty Association*, 278 Conn. at 785, 900 A.2d 18. Because LePage died within two years of September 1, 2004, his beneficiary is entitled only to the "amount equal to the premiums paid less the loan balance as of the date of his death." J.A. at 36.

We are unpersuaded by plaintiff's arguments to the contrary. In particular, plaintiff argues that "First Colony would have us utilize ... the date issued rather than an easily ascertainable, concrete date, such as the day to pay premiums and measure the duration of the policy (or even the application date). If that is what First Colony intended, it must explicitly and unambiguously inform the insured of that information." Appellee's Br. at 15. What plaintiff's argument misses is that First Colony did precisely that—by noting clearly in the suicide clause that the relevant date would be the Date of Issue, *see* J.A. at 36, and then cross-defining that date as "SEPTEMBER 1, 2004" in the policy's Schedule, *id.* at 32. The fact that the Policy Date is arguably a less "arbitrary" date to include in the suicide clause, *see* Appellee's Br. at 15, is not enough to create ambiguity where there is none.

Furthermore, we are unpersuaded by the District Court's reasoning. The District Court began its analysis by first looking to the TIAA, despite the fact that the Supreme Court of Connecticut instructs us to look only to the "four corners of the policy," *Connecticut Insurance Guaranty Association*, 278 Conn. at 784–85, 900 A.2d 18, and despite the fact that the TIAA itself states that, once delivered, the policy replaces the TIAA as the operative document, *see* J.A. at 26. In the absence of ambiguity within "the four corners of the

policy," our inquiry should go no farther. *Connecticut Insurance Guaranty Association*, 278 Conn. at 784–85, 900 A.2d 18. However, even if we were to consider the TIAA alongside the policy in determining whether or not the suicide clause of the policy is ambiguous, we remain unpersuaded by the District Court's ruling. The TIAA states only that "[s]ubject to the terms of the policy applied for and this TIAA, the Insured agrees to pay the Limited Amount to the beneficiaries listed in the Application—Part I upon receipt of due proof that the Proposed Insured died while temporary insurance was in effect." J.A. at 26. The TIAA then notes separately that "[t]he Insurer's liability will be limited to a return to the Amount Remitted if ... the Proposed Insured dies by suicide." *Id.* In light of the fact that the TIAA contained its own, separate, suicide clause, the District Court erred in concluding that a reading of the TIAA and the policy together "creates an ambiguity as to when the parties intended the Suicide clause [of the policy] to be effective." *Id.* at 64. Even when reading the TIAA and the policy together, it is clear that when the TIAA was the operative document, the TIAA's suicide clause was in effect, and that when the policy replaced the TIAA as the operative document, the policy's suicide clause was in effect. Accordingly, even under this reading, we find no ambiguity in the agreement between First Colony and the insured.

## CONCLUSION

For the reasons stated above, the December 28, 2007 judgment of the District Court, entered in favor of plaintiff, is **REVERSED**. Judgment shall enter for defendant.